```
UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------x

DAMIAN Y. KOLODIY,

                Plaintiff,

          v.                           17 CV 830 (VEC)

EBGENY AFINEEVSKY, and
PRAY FOR UKRAINE PRODUCTION LLC,
                                       Conference
                Defendants.
------------------------------x
                                       New York, N.Y.
                                       October 27, 2017
                                       10:00 a.m.
Before:

         HON. VALERIE E. CAPRONI

                                       District Judge




            APPEARANCES


SHEARMAN & STERLING LLP
     Attorneys for Plaintiff
BY:  MATTHEW BERKOWITZ
     JOSEPH PURCELL


ASHCROFT LAW FRIM LLC
     Attorneys for Defendants
BY:  MICHAEL J. SULLIVAN


ALEXEY TARASOV
     Attorney for Defendants
```

1               (Case called)
2               THE COURT:  I have before me a motion to dismiss by
3     plaintiff of the defendants' counterclaims for defamation.  I
4     have read your papers.  I have considered your arguments.  Your
5     motion is denied.
6               The plaintiff has repeatedly accused the defendant of
7     being a liar.  The defendant's business is being a
8     documentarian.  That goes to his business.  Whether he is ever
9     going to be able to prove any of this is a different story, but
10    I'm going to let it proceed.  So your motion is dismiss is
11    denied.
12              That brings us to discovery, which is why I invited
13    you all here this morning.  I had previously extended your
14    discovery deadline to November 15th.  I currently have a
15    request from the plaintiff to extend it again.
16              Let me say to everyone I do not like letters like your
17    October 18 letter.  I want lawyers to work together
18    cooperatively, collegially, and professionally.  My individual
19    rules say don't write me about discovery disputes, get on the
20    phone together and call.
21              To the extent you feel that you have to write me a
22    letter, and I understand that sometimes lawyers just feel
23    compelled to write a letter, please do not engage in sniping at
24    each other.  Specifically, Mr. Berkowitz -- I think you are the
25    signatory on this letter -- you say, and I quote:

"On September 25th (regrettably more than two weeks late) the parties submitted a joint letter noting that 'As of the date of this letter, defendants have not indicated to plaintiff whether they intend to use some or all of the 18 third-party witnesses.'

"Defendants represented in that letter that they will respond within two weeks from the date of this letter to plaintiffs' counsel.  Defendants failed to comply with their own self-granted extensions.  Defendants did not actually notify plaintiff about their intentions until October 17th, and then only confirmed that we intend to use all of the witnesses identified to date at trial."

You could have just said they didn't do what they said they were going to do.  So please stop this.  I understand that the two gentlemen at the end are at each other's throats.  But the people with "Esq." at the end of their names should not be.

All of that said, Mr. Berkowitz, I share your frustration at the pace of discovery.

That said, Mr. Sullivan and his team are new to the case.  I'm glad your client is here.  I'm going to give Mr. Sullivan and his team the benefit of the doubt on discovery.  If you change attorneys one more time, any deadline I have set is going to remain.  If that means you are left without discovery, too bad, so sad.  If it means I preclude evidence because they haven't had an opportunity to take discovery on

it, so be it.  I'm not telling you have to keep Mr. Sullivan.
But if you change counsel again, those are the rules of the
road.  Understood?

         MR. AFINEEVSKY:  Yes, your Honor.

         THE COURT:  There are four issues, as I count them, in
Mr. Berkowitz's most recent letter.  Here are the issues that I
understand.  First, there is the issue of document production
from the defendants: specifically, whether the defendants will
have substantially completed or entirely completed discovery by
October 30th.

         The second issue is the defendants' responses to the
plaintiff's interrogatories.  The third issue is the location
of depositions for the 18 nonparty witnesses.  The fourth,
which sort of is a subcategory of the third, is the issue of
contact information for the Ukrainian witnesses, whether the
defense counsel will accept service of process and whether the
ambassador will waive diplomatic immunity.  Overarching all of
that is whether there will be an extension of discovery.

         Do I have all of your issues, Mr. Berkowitz?

         MR. BERKOWITZ:  There is one more discovery issue on
the document requests that is still outstanding, and that has
to do with our request for revenue information with respect to
the defendants' various movies.  This came up on the call with
your Honor on September 22nd, and you had said to call back if
we could not reach resolution.  That hasn't been resolved.

1   THE COURT: We'll come back to that.

2   Start with the first issue, which is document
3   production. Mr. Sullivan, why can you not complete all of your
4   document production based on the requests for production that
5   have been outstanding now for months by October 30th?

6   MR. SULLIVAN: Your Honor, first, we had an agreement
7   with the plaintiff that substantial completion would be done by
8   October 30th. In fact, substantial completion is done. We
9   indicated to the plaintiff, and we did this, your Honor, prior
10  to the letter -- this is by way of email -- with the plaintiff
11  agreeing to substantial completion by October 30th and that
12  document production was to be completed probably by the first
13  week in November. In fact, our document production will be
14  done by November 3rd. So we have substantially completed.

15  For purposes of background, your Honor, we received
16  the hard drives as we reported to the Court on the call. There
17  were over 86,000 documents, about a quarter of a million pages.
18  We have 58 search terms both in English and Russian that we had
19  to use that produced over 21,700 hits.

20  We have reviewed about 70 percent of those and
21  produced the other documents that were responsive to the
22  document production request to Mr. Berkowitz on a rolling
23  basis. The document production will be completed by Friday of
24  next week. So we believe that we are substantially completed.
25  We thought we had an agreement of October 30th for substantial

completion. We are ahead of that date. And with the privilege log to be produced by November 10th.

THE COURT: Mr. Berkowitz, do you want to be heard on that?

MR. BERKOWITZ: Yes. Your Honor, this is the first I've heard that they are substantially complete at this point.

THE COURT: Stop that. I don't want that kind of statement. I really don't. I am going to accept for purposes of argument that neither of you has heard anything the other attorneys going to say. His proposal, which is he is going to be entirely complete by November 3rd, privilege log by November 10th, comment on that.

MR. BERKOWITZ: That works for us, assuming we have adequate time for depositions afterward.

THE COURT: It is so ordered that defendant will complete all of the document production by November 3rd and will produce a privilege log on November 10th.

The next issue was interrogatories. What is the story with the interrogatories?

MR. SULLIVAN: I apologize, your Honor. I'm not aware that there is an issue with regard to the interrogatories.

THE COURT: According to Mr. Berkowitz's letter, that's issue number two, which appears on page 2 of the letter in the first full paragraph. Towards the bottom of that paragraph it says, "Nor have defendants yet responded to any of

1  plaintiffs' substantive interrogatories, which they objected to
2  early in the case under local rule 33.3."
3           MR. BERKOWITZ:  Your Honor, if I may, this was about
4  the idea that we didn't have enough information, all facts,
5  documents, or interrogatories responses to take depositions.
6  It is not something that we had hashed out specifically on the
7  discovery call, in Mr. Sullivan's defense now.
8           THE COURT:  Any reason you cannot respond to those
9  interrogatories by November 13th?
10          MR. SULLIVAN:  There is not, your Honor.
11          THE COURT:  You will respond to all interrogatories
12 outstanding, assuming there are not other objections beyond the
13 local rule.  Your deadline is November 13th.  To the extent
14 those interrogatories generate any follow-on document requests,
15 your document requests must be served by November 20th.  The
16 production of any follow-on documents will be due December
17 15th.
18          That brings us to the issue of where you are going to
19 take the depositions of the 18 Ukrainians.  Mr. Sullivan.
20          MR. SULLIVAN:  Ukraine, your Honor.  Mr. Berkowitz is
21 asking the defendant defending Mr. Berkowitz's clients claim to
22 pay for the cost of transporting the witnesses to the United
23 States in advance of the trial for purposes of deposition.  I
24 think that is completely unreasonable.  There are a number of
25 ways that the depositions could be taken, including video.  If

1    Mr. Berkowitz wants to depose any or all of these witnesses, we
2    suggest the Ukraine.
3             THE COURT:  How about a mutual Western European
4    country?
5             MR. SULLIVAN:  I suppose provided the witnesses are
6    willing to move to a neutral Western European country for
7    purposes of the deposition.  Your Honor, we don't have any
8    particular control over any of these witnesses.  These are fact
9    witnesses.
10            THE COURT:  You have enough control that they are
11   apparently willing to come to court.
12            MR. SULLIVAN:  They are willing to come to testify,
13   your Honor.
14            THE COURT:  Assuming they can get visas to get into
15   the country.  I have a criminal case starting on Monday where I
16   have one Ukrainian witness what can't get a visa.
17            Mr. Berkowitz?
18            MR. BERKOWITZ:  Your Honor, putting aside safety
19   concerns at this point, I can't take a deposition in the same
20   way in the Ukraine that we could here.
21            THE COURT:  What do you mean?
22            MR. BERKOWITZ:  According to information that I have
23   from the Ukrainian government -- I have some website printouts
24   of it -- I have to submit questions in advance.  I can't just
25   notice topics.  I can't take document discovery.  These are all

limitations on what would be normal U.S. discovery procedures. We don't actually think they are going to call 18 witnesses, most of whom are noticed on the same topic.  The burden has been put on us to take non-U.S. style discovery on all of these witnesses without really any belief that they are going to call all of these people.

    THE COURT:  What is my authority to order them into some other location?  Or why can't you do it by video?

    MR. BERKOWITZ:  I still couldn't get the documents in advance.  I still couldn't subpoena them for documents.  I still have to write out the questions in advance.

    THE COURT:  How can I overcome the Ukrainian blocking statute that doesn't allow you to subpoena documents?

    MR. BERKOWITZ:  It is a matter of they are precluded from testifying unless they submit themselves to the juris-diction of this court or go to a neutral site like your Honor said.  We would do the same with our witnesses who are from the Ukraine.

    THE COURT:  The defendant doesn't control these wit-nesses in that sense, do they?  I understand that, and that would be perfectly reasonable if these were parties.

    MR. BERKOWITZ:  Understood, your Honor.  But just the same, like they might want to come for a trial date wherever they might be set, they could come as if the trial was during discovery and come for a deposition just the same as they might

1    come for trial.

2              If those witnesses are not available the second time,
3    the federal rules provide for entry of that deposition
4    testimony.  It still just has to be one trip, and it is just a
5    matter of when your Honor orders that to be, just like they
6    would have to come for a particular trial date if your Honor
7    order a particular trial date.

8              MR. SULLIVAN:  Your Honor, we don't have any control
9    over the witnesses and whether or not the witnesses would be
10   available to travel to a neutral third country.  Mr. Berko-
11   witz's request is for the defendant to pay for the cost of
12   these witnesses coming in for his deposition.

13             THE COURT:  I don't think he cares who pays for it as
14   long as he is not paying for it.

15             MR. SULLIVAN:  That's true.  I suspect the witnesses
16   aren't going to come here on their own penny.

17             MR. BERKOWITZ:  Your Honor, somebody has to pay for
18   one trip for them.  If that one trip is to be paid for, it
19   should be during the deposition period.  That's our view.  It's
20   the same cost.  If they don't want to pay for a second trip,
21   then Mr. Sullivan can enter their deposition testimony.

22             THE COURT:  Anything more that you want to tell me on
23   that?

24             MR. SULLIVAN:  You have the Hague Convention as well,
25   your Honor.  We could use another source for the purpose of

1    getting evidence from these witnesses.

2             THE COURT: Based on the Ukrainian statute, it sounds
3    like that is going to be limited to written interrogatories.

4             MR. SULLIVAN: Your Honor, he hasn't exhausted the
5    means for purposes of taking a deposition. It seems to me it
6    is not even ripe before the Court. He hasn't taken any steps
7    at all to see whether or not they would succumb to a deposition
8    other than what might be within the rules of the Ukraine.

9             THE COURT: Have you given him contact information
10   yet?

11            MR. SULLIVAN: We have not given him the addresses.
12   We can provide the addresses. We understand the plaintiff is
13   familiar with a number of the witnesses who are on the witness
14   list.

15            THE COURT: That is issue number 4, which is contact
16   information, whether you will accept service of process and
17   whether the ambassador is willing to waive diplomatic immunity.

18            MR. SULLIVAN: I have no authority to represent the
19   ambassador in terms of whether or not there will be any waiver.

20            THE COURT: I'm not asking you whether you represent
21   him. Is he willing to waive diplomatic immunity? Are you in
22   contact with him?

23            MR. SULLIVAN: I don't know. I am not, your Honor. I
24   don't know whether Mr. Berkowitz has asked the ambassador. He
25   is the one who wants to depose the witness. They should take

1  some reasonable steps.

2　　　　　THE COURT:  Have you tried to talk to him?

3　　　　　MR. BERKOWITZ:  We were waiting for the information of
4  who they were actually.

5　　　　　THE COURT:  You have known since before we wrote me
6  this letter that they are saying they are going to call 18
7  witnesses.

8　　　　　MR. BERKOWITZ:  Actually, your Honor, I think on the
9  original call they said it would probably be less than that.

10　　　　　THE COURT:  But they are reserving the right, is that
11  not the way they put it?

12　　　　　MR. BERKOWITZ:  The answer, your Honor, is we have not
13  contacted him.  We can do that.  We think he will have to waive
14  diplomatic immunity if he is going to testify at trial, and if
15  he is going to do that, that should happen during discovery.

16　　　　　THE COURT:  It sounds to me like you need to do some
17  more work on that.  You also need to do some work on
18  contacting.  Do you know some of these witnesses, some of the
19  18, the small army of witnesses, or does your client?

20　　　　　MR. BERKOWITZ:  It is a minority of them, but yes.

21　　　　　THE COURT:  Have you contacted any of them?

22　　　　　MR. BERKOWITZ:  We have talked to two, yes.

23　　　　　THE COURT:  Are they willing to go to a neutral
24  country to be deposed?

25　　　　　MR. BERKOWITZ:  There is one of them that I think,

1  pending a visa, would come here.

2        THE COURT:  So you have some.  I'm not sure what I'm
3  going to do about this.  You both have some reasonable
4  arguments.  I want to see briefs on exactly what my authority
5  is to say that the defendant should bring him to the country
6  now, he will be deposed on video; alternatively, they are not
7  going to be permitted to testify at trial.  Similarly, what, if
8  anything, I have the power to do relative to the ambassador
9  witness.  I would think that the answer is either he waives --
10 is he here in the country now?

11       MR. BERKOWITZ:  I believe he is in Washington, D.C.

12       THE COURT:  That is part of the country.

13       MR. BERKOWITZ:  Yes.

14       THE COURT:  He either has to waive so that he can be
15 deposed or he's going to be precluded from testifying.  The
16 question is whether I have the authority to enter that order.
17 That seems reasonable to me, that he can't not make discovery
18 and then show up as a witness.

19       MR. BERKOWITZ:  Would you like us to file the opening
20 brief on that?

21       THE COURT:  Yes.  I'll get back to you on the timing
22 of that.

23       That brings us to the revenue issue, which is the open
24 issue.  Refresh my recollection what the issue is.

25       MR. BERKOWITZ:  Your Honor, we could get this

1  information in a number of different ways.  What we want to
2  show effectively is a trend line for the defendants' career
3  revenue.  We believe, we don't know this for sure, but we
4  believe there is a big spike where the infringement and alleged
5  false advertising occurs.  It is a causation issue.  It is
6  purely evidence, further evidence, of causation that the
7  infringement and the false advertising led to revenue in the
8  defendant.
9         THE COURT:  Why is that relevant to damages?  The
10  issue is what happened to your client.  He's the plaintiff.
11         MR. BERKOWITZ:  There are two points to that, your
12  Honor.  One is we do think that there were two films, two kind
13  of competing films, and if it wasn't defendant, it may very
14  well have been plaintiff.  Also, the Lanham Act provides for
15  disgorgement of profits.  So we have a false advertising claim,
16  and we think it is relevant that defendant made profit.
17  Whether it is final proof or not is a different issue, but we
18  think it is relevant that he made significant profit vis-a-vis
19  his prior movies and that there is a correlation between the
20  false advertising there.
21         MR. SULLIVAN:  We just think it is not relevant, what
22  he has made in terms of gross profit on any of the other films,
23  except for the film in question.
24         THE COURT:  How many other films did he make prior to
25  this one?

1            MR. SULLIVAN:  I don't know.  May I ask?
2            THE COURT:  Sure.
3            MR. SULLIVAN:  Five, your Honor.
4            THE COURT:  All documentaries?
5            MR. AFINEEVSKY:  No.  There were feature.
6            THE COURT:  The others were regular feature films?
7            MR. AFINEEVSKY:  Yes.
8            THE COURT:  Did you make any documentaries before
9    this?
10           MR. AFINEEVSKY:  Yes, I did.  I started when I was 16.
11           THE COURT:  How old are you now?
12           MR. AFINEEVSKY:  45 since last Saturday.
13           THE COURT:  Congratulations. Happy birthday.  Other
14   than the one you made as a teenager, when was the prior
15   documentary?
16           MR. AFINEEVSKY:  Divorce: A Journey Through Kids Eyes.
17           THE COURT:  When was it made?
18           MR. AFINEEVSKY:  2012-2013.
19           THE COURT:  That seems to me to be the only one that
20   could even possibly be relevant.  Then you have the problem of
21   you have a single data point.
22           MR. BERKOWITZ:  Your Honor, I do think the others are
23   relevant.  We could take the information in a number of
24   different ways.  It could be an interrogatory.  It could just
25   be an answer of how much revenue he received for the various

1   films. We want to be able to show a trend line. Whether a
2   documentary is in such a different category as another kind of
3   film, I'm not sure.
4           THE COURT: If his documentary on the Ukrainian
5   revolution made a lot more money than a feature film, that
6   might be interesting.
7           MR. BERKOWITZ: We are willing to take this infor-
8   mation a number of different ways, but we don't want to not
9   have it. We think it is a relevant data point to show
10  causation.
11          MR. SULLIVAN: Your Honor, we just don't see the
12  relevance at all with regards to the profit made on any other
13  films.
14          THE COURT: I think this is sufficiently close that I
15  am going to let you brief that as well. On this one I'm going
16  to have the defendant start. You are essentially requesting
17  that the plaintiffs' request for this information be quashed.
18  How long do you like for that, Mr. Sullivan?
19          MR. SULLIVAN: Three weeks, your Honor.
20          THE COURT: Three weeks from today?
21          MR. SULLIVAN: Yes.
22          THE COURT: That would be November 17th. Let me back
23  up. Let me give you two weeks for this, so 11/10. I am going
24  to give you until November 10th as well for the brief on what
25  is my authority relative to where the depositions take place

1  and the waiver of immunity for the ambassador.  You are going

2  to cross.  I will give you each two weeks to respond, a little

3  under two weeks to respond, so that it is not due the day after

4  Thanksgiving.  Make it the day before.  November 22nd your

5  responses are due.  No replies.

6          One further thing.  In your letter you said you are

7  perfectly happy with the existing discovery deadline, that you

8  don't need any more time for discovery, right?

9          MR. SULLIVAN:  We said if in fact no additional

10  discovery time was being afforded for the plaintiff.  All we

11  said to the plaintiff, your Honor, is whatever the discovery

12  schedule should be, it should be for both parties.  We thought

13  we had an agreement with regards to that.

14          THE COURT:  Stop.  I already told you I don't want to

15  hear that.  I'm not going to respond on one side.  I hear you

16  and I've made it clear to the defendant that we are not

17  changing counsel again, or if we do, the discovery deadlines

18  are going to stand.

19          Because we are going to need some time to think about

20  the issue of where the depositions take place and then you are

21  going to need some time to actually take the depositions --

22  have the parties been deposed yet?

23          MR. BERKOWITZ:  Not yet.

24          THE COURT:  Do you have dates for that?  Are you

25  trying to postpone them until the very end?  What's the story?

SOUTHERN DISTRICT REPORTERS, P.C.
(212) 805-0300

1    MR. BERKOWITZ: From the plaintiffs' side, we just
2  received the notice for Mr. Kolodiy's deposition. We have not
3  noticed it for the defendant. We are waiting for the
4  documents.
5    THE COURT: I'm going to give both parties until
6  January 26th to get all of your depositions done. To the
7  extent those depositions give rise during the deposition or
8  when you think about it afterwards to follow up requests for
9  documents, those follow-up requests must be made not later than
10 February 2nd. Responses to those requests for follow-on
11 documents must be produced by February 16th. We'll have a
12 status conference on February 23rd, at which point you will all
13 tell me that your fact discovery is complete.
14   MR. BERKOWITZ: Does that June 26th deadline include
15 the Ukrainian witnesses?
16   THE COURT: Yes. That's why I pushed it a little
17 further than I had planned. We will have it briefed. That
18 gives you two months from the time you finish briefing it to
19 try to turn around and answer for you really quickly. That
20 gives you two months to take those depositions. No matter
21 where they are going to be, that ought to give you enough time
22 to do it.
23   MR. BERKOWITZ: I think, your Honor, it says two to
24 three months to do it via the Hague.
25   THE COURT: If we have to go by the Hague and that is

1   the only solution, I will adjust the schedule accordingly.
2   Surely there is going to be a better solution than the Hague
3   Convention.
4           That brings us to expert discovery.  Is there a plan
5   to take expert discovery?
6           MR. BERKOWITZ:  We will likely have one or more expert
7   witness, your Honor.  We don't have a set plan in terms of
8   report deadlines agreed upon, and I don't think it has been
9   discussed at this point.
10          THE COURT:  Is the defendant going to need expert
11  discovery?
12          MR. SULLIVAN:  Yes.
13          THE COURT:  The parties need to meet and confer.
14  Given what you have now have as your fact discovery deadline,
15  what is your expert discovery deadline.  While I am loath to do
16  this, you are going to have to agree on interim deadlines: who
17  produces reports when, who produces responsive reports when,
18  when depositions will occur.  I want that all to be so ordered.
19  I don't want to see you guys again on discovery issues and I
20  don't want to hear from you again on discovery issues.
21          If you really can't work it out, that's fine, that's
22  what I'm here for.  But you are all good lawyers.  There is no
23  reason why you can't work out these problems.
24          Anything further, Mr. Berkowitz?
25          MR. BERKOWITZ:  No, your Honor, not from us.

```
 1                THE COURT:  Mr. Sullivan?
 2                MR. SULLIVAN:  Nothing, your Honor.
 3                THE COURT:  On the two issues that I have given you to
 4   brief, you both have 10-page limit, a page limit of 10 pages.
 5                MR. SULLIVAN:  For the reply as well?
 6                THE COURT:  No reply.  Just responses.  You have a
 7   total of 20 pages, 10 for opening brief, 10 for responsive
 8   brief.
 9                Anything further from the defendant?
10                MR. SULLIVAN:  No.
11                THE COURT:  Thank you all.
12                (Adjourned)
13
14
15
16
17
18
19
20
21
22
23
24
25
```