**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

---

DAMIEN Y. KOLODIY,

Plaintiff,

v.

EVGENY AFINEEVSKY; PRAY
FOR UKRAINE PRODUCTIONS, LLC,

Defendants.

17-cv-00830

**BRIEF TO PRECLUDE DISCOVERY
OF REVENUE FROM PRIOR
AND FUTURE MOVIES
NOT CONTAINING ALLEGEDLY
INFRINGING FOOTAGE**

---

Defendants Evgeny Afineevsky and Pray for Ukraine Productions, LLC (collectively "Defendants") respectfully submit this brief as per the Court's order dated October 27, 2017. The purpose of this submission is to provide the Court with pertinent authorities supporting the preclusion of the irrelevant discovery of revenue from prior and future movies of Evgeny Afineevsky (hereinafter "Afineevsky") that do not contain allegedly infringing footage.

## DISCOVERY REQUESTS AT ISSUE

On or about July 26, 2017, Plaintiff submitted to Defendants' prior counsel a Corrected Third Set of Requests for the Production of Documents. Requests number 51 and 52 sought the following information:

> REQUEST NO. 51. All contracts with HBO concerning the film *Cries from Syria*.
>
> REQUEST NO. 52. All documents reflecting income received in connection with the film *Cries from Syria*.

In response to those requests, Defendants timely stated their objections and expressly stated they would not be producing any documents pursuant to the request at issue:

> RESPONSE TO NO. 51 and 52: Defendants object to this request to the extent that this request is irrelevant and beyond the scope of this litigation. This request improperly seeks information not reasonably related to the alleged infringement or any claims and defenses at issue in this action and is thus not reasonably calculated

to lead to admissible evidence. Defendants further object to this request to the extent that it seeks confidential, non-public, proprietary, trade secret, and/or commercially sensitive information, which impermissibly invades Defendants' right to privacy. Defendants further object to the extent the request seeks documents that are privileged pursuant to the attorney-client privilege and work product doctrines.

As such, Defendants will not be providing any documents in response to this overbroad and irrelevant request.

On or about September 26, 2017, Plaintiff served on Defendants' counsel, Plaintiff's Fourth Request for Production. In this production request, Plaintiff requested revenue generated to date for all of Defendants' films from 2007-present. Defendants' response, to this latest request for production of documents, incorporated the objections raised in connection with the *Cries From Syria* movie and stated that no documents will be produced. Pursuant to Local Rule 5.1, the full text of Plaintiff's request and Defendants' response is below:

> REQUEST NO. 53: Documents sufficient to show the total dollar amount of revenues generated to date, respectively, by each film directed by you between January 1, 2007, and the present, including but not limited to Ov Vey! My Son Is Gay!!; Divorce: A Journey Through the Kids' Eyes; Winter on Fire; and Romka.
>
> RESPONSE NO. 53: Defendants object to this request to the extent that this request is irrelevant and beyond the scope of this litigation. This request improperly seeks information not reasonably related to the alleged infringement or any claims and defenses at issue in this action and is thus not reasonably calculated to lead to admissible evidence. Defendants further object to this request to the extent that it seeks confidential, non-public, proprietary, trade secret, and/or commercially sensitive information, which impermissibly invades Defendants' right to privacy. Defendants further object to the extent the request seeks documents that are privileged pursuant to the attorney-client privilege and work product doctrines. Defendants will not be providing any documents in response to this overbroad and irrelevant request.

## PLAINTIFF'S SPECULATION OF DAMAGES

This case revolves around an allegation of copyright infringement. Plaintiff asserts – however incredible it may be – that contrary to his interactions with Spilno.TV during the Ukrainian revolution and the well-understood creative commons principle underlying Spilno.TV's

distribution of video material, Plaintiff now claims he gave his footage to Spilno.TV with the mere intention of having it kept safe, and not for further licensing. *See* Am. Compl. at ¶ 27. Plaintiff contends that approximately 70 seconds of footage that he claims to have shot ended up in Afineevsky's nearly two-hour-long film, which went on to receive an Oscar nomination and thus forms the basis of his claim. While Afineevsky has already disclosed his Netflix distribution agreement for *Winter on Fire,* including the revenue that the documentary generated, Plaintiff now attempts to extend his claims beyond that film. Plaintiff's counsel has verbally stated to the undersigned, as well as to the Court, that his theory of damages should include Afineevsky's future film *Cries From Syria*. Counsel's argument is in substance that Afineevsky's alleged use of 70-seconds worth of Plaintiff's alleged footage propelled him to fame from being a virtually unknown director and pushed his career in a direction that brought considerable revenue on subsequent projects. Purportedly in connection with his claim, Plaintiff has requested financial documents showing all revenue earned by Afineevsky's films from 2007 to the present. Plaintiff's theory is preposterous as a factual matter and lacks support in law.

### AFINEEVSKY'S HISTORY AS A FILMMAKER

Defendant Afineevsky's career began when he was a teenager, has expanded rapidly over the past two decades, and earned him various awards across the globe. It is clear Afineevsky established his reputation as a filmmaker many years prior to producing *Winter on Fire*. In particular, his film *Oy Vey! My Son Is Gay!* won the script of the year award from the Monaco Charity Film Festival and went on to collect over 23 awards in the U.S. and abroad. Additionally, his educational documentary *Divorce: A Journey Through the Kids' Eyes*, received awards and recognition on the festival circuit. By the time that Afineevsky started working on the movie *Winter on Fire* in Ukraine, he was a well-known, internationally-acclaimed filmmaker.

Afineevsky's success, in his two-decade-long career as filmmaker, has nothing to do with *Winter on Fire's* inclusion of 70 seconds of plaintiff's alleged footage. The recognition that Afineevsky received in the form of festival victories, as well as outstanding reviews by critics, stands as a testament to his professional talent and renders Plaintiff's speculative theory of damages untenable. In light of Afineevsky's successes in the movie business prior to 2014, it is wholly improper to suggest that 70 seconds of Plaintiff's alleged footage included in *Winter on Fire* became the catalyst that introduced a lesser-known talent to larger audiences, enabling Defendant to receive greater compensation on future projects.

**LEGAL AUTHORITIES**

**I.    THE DOCUMENTS THAT PLAINTIFF SEEKS ARE NOT REASONABLY CALCULATED TO LEAD TO DISCOVERY OF ADMISSIBLE EVIDENCE.**

Discovery is limited to matter "that is relevant to the claim or defense of any party" and is "reasonably calculated to lead to the discovery of admissible evidence." Fed.R.Civ.P. 26(b)(1).

**A. The information sought is irrelevant and Plaintiff cannot meet his burden of demonstrating relevance.**

Plaintiffs demands to receive financial information contained in two separate rounds of document requests are grossly overbroad and irrelevant. Plaintiff's actual damages claim is guided by 17 U.S.C. § 504(b), which reads as follows:

> The copyright owner is entitled to recover the actual damages suffered by him or her as a result of the infringement, and any profits of the infringer that are attributable to the infringement and are not taken into account in computing the actual damages. In establishing the infringer's profits, the copyright owner is required to present proof only of the infringer's gross revenue, and the infringer is required to prove his or her deductible expenses and the elements of profit attributable to factors other than the copyrighted work.

*See* 17 U.S.C. § 504(b).

Thus, a copyright owner's actual damages include the amount of profits that the owner would have received in the absence of the infringement or a portion of infringer's profits. In the case at bar, Defendants undeniably produced the documents showing profits earned by *Winter on Fire* that are attributable to the alleged infringement. The financial documents pertaining to other movies Afineevsky made before and after *Winter on Fire* would reflect profits that are not attributable in any manner to the infringement asserted in the matter at hand.

Further, Plaintiff's initial disclosures state, in pertinent part, that:

> Kolodiy is seeking his actual damages, Defendant's profits, and enhancements of the same for willfulness to the maximum extent permitted under the law. Kolodiy believes that information necessary to provide a complete computation of damages is in possession of Defendant and/or third parties, including, for example, information about Defendant's profits in connection with *Winter on Fire*.

Plaintiff's Initial Disclosures at p. 3.

Based on this response, Afineevsky produced documents that were relevant to Plaintiff's claim, but did not include the financial data for every movie he had ever made, which are much broader that than the revenue at-issue in this case. The new documents requested are not relevant to the matter at hand, in view of the fact that the relevant revenue material has been produced. Plaintiff does not need to know the revenue earned by Afineevsky on films wholly unrelated to the alleged infringement.

At minimum, the relevancy of the financial information is not readily apparent. When the discovery sought appears relevant on its face, the party resisting the discovery has the burden to establish that the requested discovery does not come within the scope of relevance as defined under Rule 26(b)(1), *Compagnie Francaise d'Assurance Pour le Commerce Exterieur v. Phillips Petroleum Co.*, 105 F.R.D. 16, 42 (S.D.N.Y.1984), or is of such marginal relevance that the potential harm occasioned by discovery would outweigh the ordinary presumption in favor of

broad disclosure. *Go v. Rockefeller Univ.*, 280 F.R.D. 165, 176 (S.D.N.Y. 2012) (citation omitted). In the opposite scenario, when the relevancy of the requested discovery is not readily apparent, the party seeking the discovery has the burden to show the relevancy of the request. *See Gardens v. United States*, No. 93-655C (Fed. Cl. February 4, 2016); *see also In re Jemsek Clinic, P.A.*, Nos. 06-31766, 06-31986, 2013 WL 3994666 (Bankr. W.D. N.C. Aug. 2, 2013); *Cunningham v. Std. Fire Ins. Co.*, No. 07-02538, 2008 WL 2668301, at *4 (D. Colo. Jul. 1, 2008); *Marook v. State Farm Mut. Auto. Ins. Co.*, 259 F.R.D. 388, 395 (N.D. Iowa 2009); *McBride v. Medicalodges, Inc.*, 250 F.R.D. 581, 586 (D. Kan. 2008); *cf. United States v. Cording*, 290 F.2d 392, 394 (2d Cir. 1961).

In accordance with the above guidance, the burden is therefore on Plaintiff to establish why the requested financial information is relevant. In light of Afineevsky's established stature in the movie business prior to making *Winter on Fire*, Plaintiff's argument that Kolodiy's 70 seconds of footage propelled his career, thereby allowing Kolodiy to receive proceeds of Defendant's future works, simply fails to hold water. Parties are not permitted "to roam in the shadow zones of relevancy" and "to explore a matter which does not presently appear germane on the theory that [it] might conceivably become so." *In Re Surety Ass'n*, 388 F.2d 412, 414 (2d Cir. 1967).

**B. The requests at issue are overly broad.**

It is hard to think of financial information requests on a filmmaker more overbroad than the ones at issue, as they strive to elicit financials for every movie Afineevsky made in the last ten years, whether feature films or documentaries, commercial projects, or public service films. In the instant case, the revenue information to which Plaintiff is entitled must be reasonably related to Afineevsky's alleged infringement of the footage Kolodiy purportedly produced. It has not been suggested that any of Afineevsky's past or future films used any part of Kolodiy's footage. The

request Plaintiff submitted for information on Afineevsky's revenues relating to all films made is overbroad because Defendant's revenues on other films were not reasonably related to his alleged infringement of the footage at issue. Not only does Plaintiff's speculation as to damages defy common sense, it defies any plausible interpretation of 17 U.S.C. § 504(b). This lawsuit is about 70 seconds of footage in one of many films Afineevsky made as a mature filmmaker and Defendants causes of action relate only to that one motion picture.

Case law favors Afineevsky's position. *Compaq Computer Corp. v. Ergonome Inc.*, 210 F.Supp.2d 839 (S.D. Tex. 2001) (financial information related to revenues unassociated with alleged copyright infringement was not discoverable); *Iostar Corp. v. Stuart,* No. 07-cv-133 (D. Utah Apr. 9, 2008) (requests were overly broad where financial information sought in misappropriation of trade secrets case was not implicated by suit and went beyond relevant time period); *Ocean Atlantic Woodland Corp. v. DRH Cambridge Homes, Inc.*, 262 F. Supp. 2d 923 (N.D. Ill. 2003) (discovery denied where broad requests for financial data went beyond issues relevant to infringement action). In *Taylor v. Merrick*, 712 F.2d 1112, 1122 (7th Cir. 1983), the Seventh Circuit held that plaintiff could have made out a *prima facie* case for an award of infringer's profits by showing defendant's gross revenue from the infringing maps, ruling that it was not enough to show gross revenue from everything defendant sold. The *Merick* court explained:

> If General Motors were to steal your copyright and put it in a sales brochure, you could not just put a copy of General Motors' corporate income tax return in the record and rest your case for an award of infringer's profits. *Id.*

## II. PLAINTIFF'S SPECULATION ABOUT AFINEEVSKY'S EARNING POTENTIAL ENHANCEMENT IS NOT SUFFICIENT TO PROVE CAUSATION TO RECOVER PROFITS FROM DEFENDANT'S OTHER FILMS.

It is not enough for Plaintiff to say that Afineevsky's alleged infringement enhanced his capacity for making money as a filmmaker to recover proceeds from Defendant's non-infringing

films, past or present. To determine which profits are attributable to the infringement, 17 U.S.C. § 504(b) sets in place a burden-shifting mechanism. The copyright claimant should first show a causal link between the infringement and the specific revenue stream on which profits are sought. *Semerdjian v. McDougal Littell*, 641 F.Supp.2d 233, 246 (S.D.N.Y. 2009) (citing *Bouchat v. Balt. Ravens Football Club*, 346 F.3d 514, 522 (4th Cir. 2003)[1]). In order to make out such a causal link, a copyright plaintiff must produce "non-speculative evidence supporting the existence of a link between the infringement and the Defendants' supposedly enhanced revenues." *Bouchat*, 346 F.3d at 526. It is only when a plaintiff satisfies the threshold causation showing that the burden shift to the alleged infringer to demonstrate its deductible expenses and the elements of profit attributable to factors other than the copyrighted work. *On Davis v. The Gap, Inc.*, 246 F.3d 152 (2d Cir. 2001). In applying this analytical framework, courts in this circuit have found infringement claims unmeritorious (1) whenever any given revenue stream from which recovery was sough had no conceivable connection between the infringement and those revenues, or (2) whenever plaintiff offered only speculation as to the existence of a causal link between the infringement and the revenues. *Semerdjian*, 641 F.Supp.2d at 246.

In *On Davis*, *supra*, the Second Circuit ruled in favor of the alleged infringer, holding that there existed no conceivable connection between the infringement and a substantial portion of the revenues claimed by plaintiff. *On Davis* involved a plaintiff who offered evidence that, during and shortly after the Gap undertook an eyewear advertising campaign that infringed his copyright, defendant's corporate parent realized sales of a billion and a half U.S. dollars. *Id.* at 159. The court

---

[1] The Fourth Circuit's oft-quoted decision in *Bouchat* has been a watershed decision in copyright law. The facts in *Bouchat* were such that the Baltimore Ravens used plaintiff's design for the team's logo. Plaintiff argued that a portion of all of the Raven's revenues was attributable to the infringement of his artwork. *Bouchat*, 346 F.3d at 517. The court reasoned that Bouchat "could survive the motion for summary judgment only by adducing specific, non-speculative evidence supporting the existence of a link between the infringement and the Defendants' supposedly enhanced revenues." *Bouchat*, 346 F.3d 514, 526 (4th Cir. 2003).

in *On Davis* held that "gross revenue" within the meaning of 17 U.S.C. § 504(b) entails "gross revenue reasonably related to the infringement, not unrelated revenues." *Id.* The Second Circuit offered the following example in *On Davis*:

> Thus, if a publisher published an anthology of poetry which contained a poem covered by the plaintiff's copyright, we do not think the plaintiff's statutory burden would be discharged by submitting the publisher's gross revenue resulting from its publication of hundreds of titles, including trade books, textbooks, cookbooks, etc. In our view, the owner's burden would require evidence of the revenues realized from the sale of the anthology containing the infringing poem. The publisher would then bear the burden of proving its costs attributable to the anthology and the extent to which its profits from the sale of the anthology were attributable to factors other than the infringing poem, including particularly the other poems contained in the volume.

*See On Davis*, 246 F.3d 152, 162 (2d Cir. 2001).

Here, Plaintiff failed to show any causal link between Kolodiy's alleged 70 seconds of footage and any of Afineevsky's revenue streams from either his past or future movies, leaving aside *Winter on Fire*. It is unfathomable that TV viewers watched Afineevsky's *Cries From Syria* documentary, for which Plaintiff is seeking to receive profits, because the film the director made the year before purportedly featured Kolodiy's footage. Even less deserving of the Court's credence is the argument that Plaintiff should discover the financials on Afineevsky's prior films. No viewer of Afineevsky's films in the years from 2007 to *Winter on Fire's* release date could have known in advance that the director would allegedly improperly incorporate the disputed footage into his 2015 documentary.

## CONCLUSION

For the foregoing reasons, an order compelling the production of additional financial documents from Evgeny Afineevsky' past or present movies should not be granted.

Dated this 10th day of November, 2017.　　　　　Respectfully submitted,

/s/ Alexey V. Tarasov, Esq.　　　　　　　　　　/s/ Michael J. Sullivan
Alexey V. Tarasov, Esq.　　　　　　　　　　　　Michael J. Sullivan (*pro hac vice*)
Attorney at Law　　　　　　　　　　　　　　　Massachusetts BBO # 487210
State Bar of Texas No. 24075140　　　　　　　　Ashcroft Law Firm, LLC
5211 Reading Road　　　　　　　　　　　　　200 State Street, 7th Floor
Rosenberg, Texas 77471　　　　　　　　　　　Boston, MA 02109
(P) 832-623-6250　　　　　　　　　　　　　　(P) 617-573-9400
(F) 832-495-4168　　　　　　　　　　　　　　(F) 617-933-7607
E-mail: alexey@tarasovlaw.com　　　　　　　　Email:
　　　　　　　　　　　　　　　　　　　　　　MSullivan@AshcroftLawFirm.com

*Attorneys for Defendants Evgeny Afineevsky and Pray for Ukraine Productions, LLC*

# CERTIFICATE OF SERVICE

I, Michael J. Sullivan, hereby certify that on November 10, 2017, I electronically filed the foregoing document with the United States District Court for the Southern District of New York by using the CM/ECF system. I certify that the following parties or their counsel of record are registered as ECF Filers and that they will be served by the CM/ECF system:

Joseph Matthew Purcell, Jr.
Shearman & Sterling LLP
599 Lexington Avenue
New York, NY 10022
joseph.purcell@shearman.com

Patrick Robert Colsher
Shearman & Sterling LLP
599 Lexington Avenue
New York, NY 10022
patrick.colsher@shearman.com

Matthew Gregory Berkowitz
Shearman & Sterling LLP
1460 El Camino Real, 2nd Flr.
Menlo Park, CA 94025
matthew.berkowitz@shearman.com

Ulyana Bardyn
Dentons US LLP
1221 Avenue of the Americas
New York, NY 10020
ulyana.bardyn@dentons.com

/s/ Michael J. Sullivan
Michael J. Sullivan